Good morning everybody. Welcome to day 2 of our sitting here in Montgomery. We are pleased to be with you and as I always do at the outset, I'll give you just a few kind of rules of the road. We, most importantly, we've read your materials, we've read your briefs, the underlying cases, statutes, record materials, and so please don't waste your own time with a bunch of factual and procedural ramp up, just get after it. You've got limited time before us today and so we want to be respectful of your time and the court's time. And so let's just get to the heart of the issue, what it is that you think drives the decision in your favor. Second, you'll understand the lighting system here. When you see the yellow light, know that your time is beginning to wind down. When you see the red light, we would ask that you wrap it up. I will not cut you off mid-sentence. There is no trap door into which you will disappear, but we would ask that you just begin to wrap up. It may be that we carry you beyond the allotted time. At that point, don't sweat it. As one of my colleagues says, you're on our time, not yours. So with that, we'll call the first case, which is United States of America v. Gardner, 20-13-645. We've got Mr. Smith here for the appellant and Ms. Atwood here for the appellee. Mr. Smith, when you're ready. Thank you, Your Honor. Cody Smith, appellant in Gardner. May it please the Court. The maximum prison term for Mr. Gardner's contested predicate offenses was less than 10 years because Alabama law did not give the state sentencing court discretion to impose 10 years or more for any of the contested predicates. Rodriguez instructs that a court applying the ACCA must look to the maximum that the state allowed for the defendant's offense. Alabama law confines sentencing courts to mandatory parameters in the presumptive standards. The government doesn't dispute that Alabama law required the state judge to sentence Mr. Gardner within the presumptive range. It also doesn't dispute that a 10-year prison term would have been an illegal sentence for any of the contested predicates. Can I ask you just maybe what is the most obvious question for your side, which is how is it that you get around McCarthy? McCarthy, sure. I think there are multiple ways. One, McCarthy simply didn't address the sort of sentencing regime that is involved here. It addressed a state-structured sentencing regime in Florida, which is their, I don't know if they're called voluntary, but their guideline system, which was advisory, not binding. So it was addressing a system where a judge had the discretion to, on his own, impose a sentence outside of the guidelines range, which simply isn't what we have here. So because of that material difference between Alabama law and the Florida law addressed ... Well, that's a factual difference, but the case says we begin with the analysis of the plain meaning of the statute, serious drug offense, which a maximum term of imprisonment of 10 years or more. And then it says that McCarthy argues that that language, means the high end of the presumptive range, is flawed because the high end is simply not the maximum. And then the court went ahead to reject that reading of the statute. So McCarthy's a reading of the statute. Right. It is, but it's a statute that creates a different regime. Where in Florida, the court said it's not the maximum because the maximum or the high end of Florida's guidelines range didn't constrain judicial discretion. Here, the presumptive standards do constrain judicial discretion. And under state law, an Alabama judge does not have the power, an offense, a conviction of an offense in Alabama that is subject to the presumptive standards, does not confer on the sentencing judge, the sentencing court, the power to go outside of that range the way that a conviction of an offense under Florida- I thought on the current range, if certain factors were met, the judge could do that. Only if they were charged and proved to a jury beyond a reasonable doubt. So it isn't a matter of judicial discretion. That becomes part of the conviction. And here, I think that one helpful way of conceptualizing the difference, I'm straying from McCarthy a little, but I'll try and come back there in a moment, is that I think there's a through line here from the context of maximum that we're talking about, the maximum in the serious drug offender definition, to the notion of the maximum that's embodied in Sixth Amendment jury right decisions such as Booker and Blakely, both of which held that a structured sentencing regime could prescribe the legal maximum. We haven't really pressed that point in our briefing because we believe that the authorities in our brief are on point and clearly support our position. But there's no clear reason that the word maximum in the serious drug offender definition would mean something different from the traditional conception of a maximum in Sixth Amendment case law. Carachuri, Rosendo, and this is where I'm going to start to bring it back to answering Judge Hall's question. Rodriguez and Carachuri, Rosendo, both tie the maximum that federal law looks to, to all facts that the law makes essential to the punishment, which is the same link that is drawn in those decisions regarding the Sixth Amendment jury rights. So I'm going to give a quote from Blakely, which dealt with Washington's guidelines regime, and then one from Carachuri, Rosendo, that I think shows how strong this connection really is. In Blakely, the Supreme Court said that the relevant statutory maximum that Apprendi's rule refers to is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. Similarly, Carachuri, Rosendo says the mere possibility that the defendant's conduct coupled with facts outside the record of conviction could have authorized a longer sentence is insufficient. So that's what brings us back to the departure authority here would require facts outside of Mr. Gardner's convictions. It would require... Departure was in the record. It was a jury trial. A jury trial. And everything that would... Nobody would differ with the idea that there was departure evidence. Would you have to be that in the indictment? It would have to be not only in the indictment. You would have to have a jury... You would have to put the departure evidence in the indictment. You would have to identify a jury rating factor in a written notice. Well, but if they have... But the trial is ongoing and the judge has no idea whether he's going to hear evidence that would warrant a departure. So what happens here? Yeah, so there... There has to be an indictment anyway? That is... So not technically the indictment, but there has to be pre-trial written notice. So that does really get to the heart of this, Judge Schoflat. So they tried the aggravating circumstances prior to trial? Absolutely. It has to be alleged in writing prior to trial. And it has to be in the jury's verdict. It has to be found, specifically found by the jury beyond a reasonable doubt. Just as, for example, brandishing for a 924C would have to be found by a jury beyond a reasonable doubt. They're sentencing factors. They're not elements of the crime. Well, they are elements in the notion that they increase... No, but technically speaking, they're sentencing factors that provide for an enhancement, let's say, of the Florida guidelines, but they're not elements of the underlying crime. Well, I respectfully disagree with the characterization, although I also don't think the terminology... Matters. ...really matters as much. What matters is that Alabama law has said that these are things that have to be found by a jury beyond a reasonable doubt. And here I want to draw a link back from my Blakeley and Booker discussion to the presumptive standards. The Blakeley is, the Alabama Sentencing Commission has identified Blakeley as the legal reason that the presumptive standards give a jury right for aggravating factors because they increase the maximum. Well, this is like Reprendi then. Reprendi applies. Well, so I'm saying that I believe there's a connection between the... How is this different from the Apprendi situation? Well, I think it ultimately winds up being kind of two sides of the Apprendi coin, if that's not too abstract of an explanation. But yes, I do think that... Well, the requirements are the Apprendi requirements, basically. Right, so Alabama has created a system that would comply with Apprendi's requirements and with Blakeley and Booker's requirements, where there would be, because these facts increase the legal maximum under Alabama law, they have to be found beyond a reasonable doubt by a jury. And that is, yes, because of Apprendi's rule. And the Alabama Sentencing Commission specifically said that when it started to transition from the initial purely voluntary standards to the presumptive standards, which would impose mandatory limits, they had to make, they had to provide a jury right for an aggravating factor because it would have the effect of increasing the maximum punishment. So would we have to reject the categorical approach and say, for purposes of this enhancement, it depends on case by case, what happened as to that, at trial, as to that serious drug offense? That would be the rule we'd have to adopt. I don't believe so, Judge Hull. And the reason, I have no problem with the label categorical approach in this context. The thing is, the label ultimately just begs the question. It doesn't answer... I agree with it, it begs the question. That's the problem here. Right, so I think whether you call it a categorical approach or not... Let's remove that word. So basically, if we adopt your rule, what we'd have to do to see whether this enhancement applied or increased sentence applied, we'd have to look at each case individually to determine what was the maximum sentence permitted by law. I think only... Individual determination as to each case, exactly what happened in the state trial proceedings, to see what it was, because you couldn't look at the sentence because they might have gotten discretion downward, upward, based on the factors. Right. Do you see? So to determine the maximum sentence permitted by law, under your distinguishing McCarthy, which I'm not sure you can do because you read the last paragraph, it says, we conclude, and it's not based on any factors other than text of the statute, but beside that McCarthy issue, you'd have to, in every case on a serious drug offense, we'd have to look at the Florida law and the Florida trial to see what actually happened. Right? So is it okay? I'm out. Yes, yes. No, you wouldn't have to, certainly wouldn't have to look at the factual record in any way, but state law, you have to look at the contours of state law because Rodriguez held the ACCA incorporates the contours of state sentencing laws by its reference to the maximum term of imprisonment. And Rodriguez rejected the idea that there would be a single across the board maximum. For example, there, for the offenses, the Washington offense involved there, there were two different maximums that depended on whether someone was a recidivist. But so there's not one across the board category, certainly. Rodriguez recognized two because that's what Washington law created, but it didn't say, well, two is as high as we're willing to go here. The contours of state laws determine how many different maximums there might be. And in a structured sentencing regime, there are more, just like in the structured sentencing regime that the Supreme Court looked at in Blakely. So tell me, I agree with you, it's not really facts we're looking at. We look at the contours of the state sentencing law, but what do we look for? We look to see if there was a jury verdict because the judge could have gone down, gone up, or not. We're looking at whether the judge had discretion to do so. Is that what we're looking at? What are we looking at for the contours of state sentencing law to determine what the statutory maximum was for your particular defendant? Right. Discretion is a great word. It is what was the boundary of discretion. So in McCarthy, a judge, Florida law gave a judge the discretion to irrigate to herself the power. And what do we look at when we look at what was the boundary of discretion in the record? What do we look at? Look at whether an aggravating, in Alabama's presumptive standards, you would look at whether an aggravating factor was charged and found by the jury or, in the case of a plea, admitted by the defendant. Counsel, in Alabama, is this particular crime indictable by a grand jury? Yes. How about by the prosecutor? In some states like Florida, a prosecutor can file what is called an information. Right. It serves as an indictment. Right. I believe, and I should know this, I'm sure there are people in the room who do know this, but I believe in Alabama a defendant can plead on an information in state court. Well, if an indictment is required, it would seem to me that the pretrial, the prosecutor, could enlarge the indictment to cover the aggravating circumstance because that's a grand jury function. I do want to clarify. So the aggravating factor, Alabama law doesn't require it to be in the original indictment. It requires written pretrial notice of it and a jury finding beyond a reasonable doubt. Does that address your question? Okay. Good. Thanks so much. You have your full five minutes. All right, Ms. Atwood, you've got 15. May it please the Court. Melissa Atwood for the United States. Alabama code section 13A56 and following prescribes the maximum term of imprisonment for all non-capital felonies in the state of Alabama. That's true even after the sentencing standards went into effect. As such, the district court did not err when it looked to the code and not the sentencing standards in conducting its inquiry for maximum term of imprisonment. Let me ask you this, sort of on the flip side of McCarthy. There seems like in Rodriguez there's a little something for everyone to go around. I mean, so your side, I think, is going to, you know, cite Rodriguez for the proposition that the court there, as I read the decision, says explicitly the phrase maximum term of imprisonment prescribed by law for the offense was not meant to apply to the top sentence in the guidelines range. They're going to say true, but the rationale of Rodriguez is a lot more defendant specific than something that looks like a categorical approach of the sort that we approved in McCarthy. Because at least in Rodriguez, the court's saying things like because Rodriguez himself was a recidivist, you know, we look to see for each of his two relevant offenses, you know, sort of how the aggravators worked in his case. So what about that piece of Rodriguez? Yes, Your Honor. And this also is, deals with the, if it's okay with you, I will also kind of address a little bit of character at this point. Yes, sure. Because I believe that is the principle that this program has relied on for his defendant specific approach. Because the government agrees that at this juncture, the question really, that the only real question for the court is, are you going to look to the offense or are you going to look to a offender specific, what he could have gotten on his specific day at his specific sentencing event, a term coined by the Alabama Sentencing Commission, as far as I can tell. In Rodriguez, my reading of the case was that, and I don't have an exhaustive understanding of Washington State law and how it has developed over time, although a number of cases have come out of there. Rodriguez appears to have had something akin to what Alabama would consider the Habitual Offender Act, which is 13A59. And I've used that by an example, an analogy. That's how I understood it. So Rodriguez was statutorily exposed to a higher sentence because of his prior convictions, much like in Alabama someone with, and the scheme is kind of complicated, but. That's okay. It's okay. The scheme is kind of complicated, but it essentially, the Habitual Offender Act will take like a Class C felony and treat it as a Class B or Class A, depending on how it was previously sentenced. So to the extent that maybe a Habitual Offender Act comes into play, we understand that that would set a defendant's parameter. That's also similar to what happened in Carachuri-Rosendo. But some of the other circuits that have read Carachuri-Rosendo, it's the United States, at least the majority in Simmons and Haltwanger, it's the United States position that they've read it a little too far. Carachuri-Rosendo said, and again, it looks, I don't want to go too far down that path, if Your Honor should have specific questions on that case, but it basically said when you get ready to translate the state conviction into whether it would have been a federal felony for purposes of the Lopez analysis under IMA, you look at what the defendant was actually convicted of. It was a crime, and in Carachuri-Rosendo, he was convicted of simple possession. So I think the result would have been the same if Mr. Carachuri-Rosendo, a hypothetical defendant, was charged with a particular crime and a jury adjudicated them guilty of a lesser included. It's whatever, just because there's a statutory crime in the nature of those facts that's a little more severe that could be found by additional elements, that doesn't mean that the defendant was convicted of all those elements. So the defendant's convicted of whatever he's convicted of. And in Alabama, this is the reason we bring it back to the code. In Alabama, his two convictions, Mr. Gardner's two convictions, absent and habitual offender application, were the possession of marijuana first was a Class C felony with a stat max of 10 years, and the distribution of a controlled substance was a Class B with a stat max of 20 years. But Alabama, I mentioned earlier that Alabama has created this concept of a sentencing event. And I think that that's very important to understanding what's going on and how Alabama's system is very different than the systems in some other structured sentencing situations, if you want to call it, use that phrase. Alabama's sentencing standards, as they call them, or sentencing guidelines, divide every case into three tranches. It's either on a presumptive list, a voluntary list, or it's not in the book at all. And when a court gets ready to sentence a defendant, the court looks at that particular sentencing hearing, what is the most serious offense the defendant's being sentenced for? And Alabama, this can be an interesting question because not only do you have the three tranches, you frequently have defendants who may be sentenced, have a bunch of cases joined for sentencing that were not joined for adjudication, for indictment or trial. They may not be in the same indictment. They may not have been tried before the same jury. But the judge ultimately will sentence a basket full of things at one sentencing hearing. And so then the court looks at, what is the most serious event or serious crime charged in this? And some of it requires that they look, I apologize, Your Honors, but I'm not going to be able to continue talking if I don't take a small sip. Part of it requires that they look to the sentencing standards. Sometimes they look to the code because the standards refer back to the code and the class of the felonies. The court decides on whatever the lead sentencing crime is. And then whatever the rules are for it, if it's in tranche one, presumptive guidelines, tranche two, voluntary guidelines, tranche three, not in the book at all, that drives the whole thing. Counsel, in Alabama, does the judge drive the sentencing guidelines? If this were in the federal system, as you well know, we have an adversary proceeding and you have a great body of facts having to do with crime charged. And out of that, the judge determines what the guidelines are and determines whether you can depart and all kinds of other things. So you never know when the case is charged whether the defendant is facing the maximum penalty or not, not until the evidence is in, as it were, for sentencing purposes, at which time the judge sets the parameters. Now, is that the way it is done in Alabama? Judge Joe Flack, it depends. And I know that's a lawyer answer. But it depends on which tranche you find yourself in at the time of sentencing. Well, you start with a sentence that there's a maximum of 10 years there. Yes, sir. Then where? Now the prosecution can put out a case. Yes, sir. And I would assume that under Alabama law, the parties can't cabin the judge's sentencing authority. I believe that for once... They can't do it in the federal system. For the ones that are on the presumptive list for the crimes, like some drug crimes that are on the presumptive list, it is my understanding of the Alabama system that it would be kind of analogous. The closest analog would be like an 8-1-1 notice. Has the legislature established the presumptive list? Yes. Or did the commission establish the presumptive list? The commission did, but it's deemed adopted by the legislature. Okay, so they sent the legislature and they adopted it. Okay. So when does the judge know, have the evidence that tells him the presumptive list? The judge will know whether or not the presumptive list or some other list applies at the time of sentencing. At time of sentencing? Yes, sir. Well, this is after the whole case. Well, if the defendant is tried, for example, for distribution of a controlled substance, one of the crimes at issue here, and it goes to a jury, he's indicted for just that crime alone. And the government is going to introduce all the relevant evidence to prove the crime? Yes, Your Honor. And the judge hears it, and then after the jury returns the verdict, he sets a later sentencing hearing. At the time of that sentencing hearing, if the defendant has any other pending cases in the county that he wants to plead guilty to and deal with them all in one hearing, in Alabama, he can do that. He can plead guilty to the other stuff and get sentenced all at once. And if one of those other crimes, those sort of ride-along crimes that he pled guilty to, whether it was indicted with the distribution or not, if one of those crimes is more serious than distribution of a controlled substance, then its category decides whether or not you're even under the presumptive list or the voluntary list or not at all. It can pull, so something on the presumptive list can be pulled off of it. The bottom line is the judge decides the guideline range at sentencing. Yes, sir. And the prosecutor can increase it by having the judge, I suppose, move the court to consider these other crimes and sentence all at once. Depending on which framework he's stuck within. If he's stuck within the presumptive range, then he can only sentence within the range. What evidence does the judge look to to decide this presumptive range? Forget the other cases. There's a worksheet, Your Honor. There's two, actually. There's a form that they fill out that talks about whether there was a gun involved and what the prior convictions were and class of convictions, I believe. And that determines whether the judge can sentence him to the penitentiary or not. Then the judge has to do another worksheet that will tell the judge how long the sentence can be, whether it's penitent, whatever he picks. If he picks county jail or probation and not penitentiary. And he has to, under Alabama law, if they're under penitentiary . . . Now, what he's doing in the worksheet is the judge is making findings of fact. Other than the prison in Alabama . . . Are they fact-bound? That's the question. The answers to the worksheet, are they fact-bound? Not the sentence length worksheet. Well, they're not fact-bound in the sense that it's mostly criminal history. So, to the extent that Almedar Torres has sort of set that apart as a separate thing. But the facts of the defendant's criminal history, sure. But on the length, on whether it's in penitentiary or something else, that worksheet has a whether or not there was a gun involved, which would be a factual determination. But that's the only thing other than criminal history category that I'm aware of. So, what if the evidence demonstrates aggravating circumstances that would warrant a departure? Or mitigating circumstances that would warrant a departure downward? Yes, sir. What happens then? That's what the evidence is before the court. The rules are different for departure up and departure down. Departure down, the judge can do himself based on the evidence that's in front of him, either from trial or from the hearing. Departure up, if you're on the presumptive list and you're stuck on that list, then it's my understanding that the state has to file something akin to what would be an 851 notice in federal court, a 21 U.S.C. 851 notice. Even though the evidence warrants the departure. Correct, Your Honor. That is my understanding. So, the prosecutor decides what the sentencing range is then. It should take two cases. You've got a case in which there's aggravating circumstances that warrant a departure. You're telling me without the notice, the judge can't consider that evidence. That is my understanding about the notice. And if the prosecutor files the notice in the same case, the judge considers it. That is my understanding. So, in part, this is a sentencing scheme that is driven in part by the sentencing commission in establishing guidelines and by the prosecutor in sentencing, in deciding what evidence the court will hear. Well, consider, I'll put it that way. The court already heard it. The court says to itself, this is the worst case I've seen. And the prosecutor made a deal with defense counsel, let's say, I'm not going to file the notice. That's the end of it. I believe that happens from time to time. Yes, Your Honor. It's a term of negotiation. I've been informed. So, the bottom line is the parties, the lawyers for the parties decide whether there's a departure or not. In a given case, it warrants it. They decide whether there's even going to, whether the judge can consider it yet. Well, yeah. Assume the evidence is there, then they would decide. Now, this is done at sentencing. Yes, Your Honor. Well, now, the jury has already heard the aggravating circumstances. If the jury is going to, it's my understanding of the system, again, I never practiced under that regime. It's my understanding of the system that if the government plans or the state plans to rely on an aggravating factor. Well, the aggravating circumstances, let's say, are just part of the evidence. Yes, sir. The judge is going to hear it. Yes, sir. Yes, Your Honor. What you're saying is that unless prior to trial, the prosecutor files a notice, the jury doesn't make a finding or does make a finding. The jury has to return a special verdict, I believe. Now, whether or not the, and I think ideally the notice would be filed prior to trial, I do not know if they're restricted from filing it mid-trial. But does it depend on the prosecutor? To my knowledge, yes, Your Honor. Thank you. Okay. Very well, Ms. Atwood. Thank you very much. Mr. Smith, you've got five minutes remaining. Thank you. Can I ask you just as you get settled, we're not counting your time against you yet, but help me with my fixation, I guess, on this language and Rodriguez that I read to Ms. Atwood, the phrase maximum term of imprisonment prescribed by law for the offense was not meant to apply to the top sentence in the guidelines range? Right. So Rodriguez's statement about the top of the guidelines range, here's a quote that I have that I believe. Well, so long as in quoting your quote, you answer my quote, that's all good. Fair enough. What page are you on? Do you have a page on that? Yeah, I'm looking at 390, 553 U.S. at 390. So the quote said the top sentence in the guidelines range is generally not the maximum term prescribed by law because guidelines sentences typically allow a sentencing judge to impose a sentence that exceeds the top of the guidelines range. And, in fact, here they were looking to pre-Blakely Washington law in 1994, and at that time the judge still had the discretion to make her own finding of an aggravator and, therefore, to buy that finding, irrigate to herself the power to depart above the guidelines range. To turn it to Judge Choflat's question, unless I've failed. No, no, no. That's good. Keep going. That is not how it works in Alabama. The judge can't, the judge can look at sentencing, can look at the evidence and decide and use his opinions of evidence to decide where within the presumptive range to sentence, but only within that range. The judge does not have the power. Do you agree with the colloquy I had with your colleague? I think I do, although I'm. At some point in the case before trial, the prosecutor decides whether or not there will be aggravating and mitigating, aggravating circumstances taken into account. Whether they will even pursue one. Now, if the prosecutor doesn't do something, the jury doesn't make the findings and the judge doesn't sentence. And the judge is bound to. It doesn't matter before the judge, after the trial unfolds, what happens. The judge says this is the worst case I've seen. But the prosecutor beforehand did not file the notice. Right. So the prosecutor in a way does the sentencing in part. So I disagree with that. The prosecutor and defense counsel meet ahead of time and they're trying to do a plea bargain. And so part of the bargain is they're going to go to trial. But the part of the bargain is the prosecutor is not going to file that notice. And that cabins the judge. Yes, I absolutely agree. Well, that harkens back to an older system where the sentence in a case was worked out in the prosecutor's office between the lawyers. Right. And this isn't working out. This is more like charge bargaining where maybe the parties agree between themselves to plead to a lesser included. That changes the elements. That changes the offense. And that changes the maximum. So in that sense, yes, the parties obviously have a role when there's a plea involved. But the judge's power comes from the conviction. It comes from the facts that the conviction comprises. And if none of those facts is an aggravating factor, the judge has no power to go outside the guidelines, the presumptive range. I also wanted to briefly address something that Judge Holt had been asking me earlier about the existence of an aggravating factor. That is part of the record of the conviction, just as each of the elements of each of the other elements. Yes, because it would be in the jury verdict. I mean, you're saying to impose a higher sentence, you have to have it in the verdict. Right. And even in a plea, such as in Mr. Gardner's case. My only point of all that is we'd have to have an individual analysis. I agree it's not facts. We'd have to look into the state court case. We would go beyond just what the statute says. Right. You would have to sentence under an ACCA situation where you looked into some part of the underlying state court to determine what the maximum permitted by law is. Yes. And I'm looking at Rodriguez, and it says, you know, we're looking at to the offense. We're really looking to the crime. We're not looking to how it's committed. I mean, that's what they say here. I know they come out saying in reversing the Ninth Circuit here because they say, well, you did have to look at the recidivism, but it was a statutory recidivism, increased statutory max. Right. There's nothing in Rodriguez about guidelines. No. Right. Okay. But that's because, well, there are things about guidelines that's just use of notice. Yes. It's not in the statute. Yes. But in terms of the holding of the case, they say you can't ignore this other statute. Sure. And that's because, may I? Yes, sir. Please. That's because that's how Washington law was. Right. But Alabama law is different. So, for example, Rodriguez said in the serious drug offense definition, it said there are three key statutory terms, offense, law, and maximum term. The offense was the violation of a conduct statute. But the relevant law was what does Washington sentencing law prescribe for that? Yes. For that. With this caveat, Washington sentencing statutes. Right. Because that's how Washington law works. Well, I agree with that. Washington law is purely a matter of statute. That's why it doesn't affect sentencing. That's what I'm trying to say. Rodriguez is so different that it's not really helpful here. Maybe. I don't know. Well, what Rodriguez recognizes is you have to look at the contours of state law. And if you don't just look at the violation contours, you have to look to the contours of state sentencing law. So, too, here. And Alabama state sentencing law is a more elaborate, a more structured regime in what it makes mandatory. Washington had that sort of elaborateness in its state guidelines system, but they did not impose legally binding limits on a judge's discretion in Alabama. Are you convinced that a prosecutor in Alabama could charge by information? I think it's critical in the way I'm thinking. Because if it's only by indictment, then it would have to be in the indictment. Right. I think a defendant can waive indictment and plead to an information in Alabama. Well, let's suppose he doesn't. Suppose he doesn't waive indictment. He's entitled to an indictment, I take it. Yes. And I apologize for not. That's all right. It's an elementary thing that I should know. I'd be happy to file a 28-day letter to the court if you want me to, as far as whether a defendant can plead to an indictment. I think it's simple enough for us to figure out. That's okay. Thank you so much. I appreciate it. Okay, very well. Thank you both. That case is submitted. We'll move on to the second case.